UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 5:26-CR-00088-01 |
| VERSUS | : | JUDGE DOUGHTY |
| JUSTIN CHADWICK BUTLER | | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS INDICTMENT FOR UNCONSTITUTIONAL SELECTIVE PROSECUTION

NOW INTO COURT, through undersigned counsel, comes the defendant, JUSTIN CHADWICK BUTLER, who, pursuant First Amendment to the Constitution, and all other pertinent provisions of law, moves for an order of this Court dismissing the indictment for selective prosecution under Federal Rule of Criminal Procedure 12(b)(3)(A)(iv) for the reasons which follow:

## I.    BACKGROUND

On February 12, 2026, a criminal complaint was filed in the Western District of Louisiana alleging violations of 18 U.S.C. §§ 115(a)(1)(B) and 875, for various online political commentary. On or about February 17, 2026, Mr. Butler was arrested for these allegations. Then, on March 4, 2026, Mr. Butler was indicted for three counts, including one count of Cyberstalking, one count of Threats Against a Successor to the Presidency, and one count of Threats Against the President and a Successor to the Presidency.

## II.    FACTS

### 1. MR. BUTLER'S PROTECTED POLITICAL EXPRESSION LEADING TO THIS INDICTMENT

Like many Americans in today's political climate, Mr. Butler is disenfranchised with

elected officials who seemingly fail to represent their constituents.[1] Due to this, he took to Facebook in an attempt to break people out of their mindset that this is normal. On September 23, 2025, United States Capital Police went to speak to Mr. Butler. During this interview, Mr. Butler made clear it is not his intent to harm anybody, or influence anyone else to harm someone.[2] However, he acknowledged if someone is a traitor to the country and the harm comes through the justice system, he would not have an issue.[3] Ultimately, Mr. Butler's attempts to have fellow citizens question the political situation,[4] led to his arrest and subsequent indictment. The statements included in the indictment included that Speaker Mike Johnson "couldnt lie so smoothly with bullet holes in his face" and "[a] real patriot would kill some of these traitors that have made this possible. [D.J.T.] and [M.J.] top of the list who i want to see tried and hanged for treason. What about y'all? Also, assassinate Netanyahu while we drop those two traitors."

Mr. Butler's prior posts on social media platforms constituted commonplace political commentary expressing vehement opposition to the President and his administration's actions, including Speaker Mike Johnson. While the language may appear crude and offensive, such "caustic" and "unpleasantly sharp attacks on government and public officials" are precisely the type of expression the First Amendment is designed to protect. *Watts v. United States*, 394 U.S. 705, 708 (1969).

### 2. THE GOVERNMENT'S DISCRIMINATORY ENFORCEMENT PATTERN

For the past several years, the government has not prosecuted individuals who have engaged in even more egregious speech against politicians who are not aligned with President

---

1 Ex. 1 (USCP-00266), 1.02, 2.17, 4.19.
2 *Id.* at 3.38-4.05, 5.00-.10.
3 *Id.* at 3.38-4.05.
4 *Id.* at 2.00.

Trump, including President Trump himself. In particular:

- On September 17, 2024, the New Hampshire Libertarian Party posted on the microblogging site, X (formerly known as Twitter): "Anyone who murders Kamala Harris would be an American hero." It added, "The point of the Second Amendment is to shoot and kill tyrannous politicians," and, "It is morally correct to use violence to stop aggression."[5]

- Shortly before the November 2024 election, President Trump said that former Representative Liz Cheney "should have guns trained on her face."[6]

- In November 2021, Representative Paul Gosar posted a video on his Twitter and Instagram accounts depicting him killing Representative Alexandria Ocasio Cortez and attacking President Biden.[7]

- Most notably and relevant to this case, in June 2025, Speaker Mike Johnson stated California's Governor, Gavin Newsom, should be "tarred and feathered."[8]

As noted above, the government's decision to investigate Mr. Butler is a clear result of his disfavored viewpoints in this current regime. This timing coupled with the absence of prosecutions of individuals who have engaged in similar or even more egregious speech regarding political figures who are not aligned with President Trump is indicative of a retaliatory motive designed to punish Mr. Butler for his exercise of protected rights rather than any neutral application of criminal law.

## III.    LAW & ARGUMENT

"[T]he law is settled that as a general matter the First Amendment prohibits government

---

5  Dave Pierce, NH Libertarians double down on political violence tweet, p.1 New Hampshire Union Leader (Sep. 17, 2024).

6  David A. Graham, *Trump Suggests Training Guns on Liz Cheney's Face,* The Atlantic (Nov. 1, 2024), https://www.theatlantic.com/politics/archive/2024/11/trump-liz-cheney-war/680485/.

7  Donie O'Sullivan, *Republican congressman posts video depicting violence against Ocasio-Cortez and Biden*, CNN (Nov. 10, 2021), https://www.cnn.com/2021/11/09/politics/gosar-anime-video-violence-ocasio-cortezbiden.

8  Andrew Solender, *Mike Johnson says Newsome should be "tarred and feathered,"* AXIOS (June 10, 2025), https://www.congress.gov/119/meeting/house/118390/documents/HMKP-119-JU00-20250610-SD004.pdf; *see also* ABC News, *Speaker Johnson suggests California Governor Newsome be 'tarred and feathered,'* (YouTube, June 10, 2025), https://www.youtube.com/watch?v=H-ZjZAVORxY.

officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Indeed, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort[.]" *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978).

Federal Rule of Criminal Procedure 12(b)(3)(A)(iv) permits dismissal of an indictment for selective prosecution. To establish a selective prosecution claim, a defendant must demonstrate two elements: (1) similarly situated individuals were not prosecuted; and (2) the government's decision to prosecute him was "invidious or in bad faith," i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of his constitutional rights. *See United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996).

Although prosecutors enjoy "broad discretion to enforce the Nation's criminal laws," *United States v. Armstrong*, 517 U.S. 456, 464 (1996), that discretion is not unfettered. One significant constraint on prosecutorial discretion is the prohibition on "selective prosecution" that is "imposed by the equal protection component of the Due Process Clause of the Fifth Amendment." *Id.*; *see also Wayte v. United States*, 470 U.S. 598, 608 (1985) ("[s]electivity in the enforcement of criminal laws is…subject to constitutional constraints," which foreclose prosecution based upon "the exercise of protected statutory and constitutional rights").

The Supreme Court has made clear that prosecutorial discretion, while broad, is "subject to constitutional constraints," including that the decision to prosecute cannot be based on "the exercise of protected statutory and constitutional rights." *Wayte*, 470 U.S. at 608. When the Executive branch selectively prosecutes based on such impermissible considerations, "the equal protection remedy is to dismiss the prosecution." *In re Aiken County*, 725 F.3d 255, 264 n.7 (D.C. Cir. 2013). This case exemplifies the "arbitrary" and "invidious" prosecution that the Equal

Protection Clause prohibits.

## 1. MR. BUTLER HAS BEEN SINGLED OUT FOR PROSECUTION WHILE OTHERS SIMILARLY SITUATED HAVE NOT BEEN PROSECUTED

*A. The Overwhelming Majority of Similar Online Political Speech Goes Unprosecuted*

The landscape of online political discourse is replete with inflammatory rhetoric directed at public officials. Social media platforms host thousands of posts daily containing similar or more explicit language targeting government officials. Yet federal prosecutions for such speech remain rare, occurring primarily in cases involving specific, credible plans for violence or repeated, escalating conduct over extended periods.

The government's own data supports this pattern of non-prosecution. According to the U.S. Capitol Police website, its most recent press release provides that its Threat Assessment Section (TAS) investigated 9,474 "concerning statements and direct threats against the Members of Congress, including their families and staff," in 2024.[9] Yet U.S. Sentencing Commission data reveals that the sentencing guideline applicable to all types of threats prosecuted under federal statutes (i.e., not just toward the President or members of Congress), U.S.S.G. § 2A6.1, was applied 278 times in fiscal year 2024.[10] The vast majority of purported threats against public officials result in no criminal charges whatsoever.

*B. Mr. Butler's Conduct Falls Within the Range of Routinely Unprosecuted Speech*

Mr. Butler's public online posts lack the specific planning, sustained harassment, or concrete steps toward violence that characterize the rare cases where prosecution is ordinarily

---

9 United States Capitol Police, *USCP Threat Assessment Cases for 2024*, United States Capitol Police, https://www.uscp.gov/media-center/press-releases/uscp-threat-assessment-cases-2024 (published Feb. 3, 2025).

10 United States Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics Guideline Calculation Based*, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/2024/Ch2_Guideline_FY24.pdf.

pursued. His expression consisted of abstract political rhetoric posted on public social media platforms—precisely the type of "political hyperbole" that courts routinely find to constitute First Amendment protected speech. *Watts*, 394 U.S. at 708. The absence of such prosecutions reflects the recognition that such speech, however distasteful, falls within the broad protection afforded to political discourse.

### C. The Government's Enforcement Pattern Reveals Selective Treatment

Analysis of comparable cases reveals that Mr. Butler has been treated disparately from similarly-situated individuals. While others have posted comparable or more explicit content without facing prosecution, Mr. Butler alone has been subjected to federal criminal charges based on isolated posts lacking any concrete plan or preparation for violence.

### 2. THE GOVERNMENT'S DISCRIMINATORY SELECTION WAS BASED ON IMPERMISSIBLE CONSIDERATIONS

### A. The Prosecution Targets Mr. Butler's Exercise of Constitutional Rights

The evidence establishes that Mr. Butler's prosecution is based not on the alleged criminality of his conduct, but on his exercise of constitutionally protected rights. In other words, the point of this prosecution is not to vindicate the government's interest in protecting against serious threats of harm to the President or Speaker Johnson. Indeed, even Mr. Butler's stated reasons for the posts are inconsistent with the conclusion that he poses any threat of violence. The timing of the prosecution—coinciding with Speaker Johnson's reelection campaign and unfavorable media surrounding the Speaker and President —reveals a discriminatory motive.

### B. The Prosecution Serves to Chill Protected Political Expression

The selective enforcement pattern here threatens to chill precisely the type of robust political discourse the First Amendment is designed to protect. By singling out Mr. Butler for

prosecution while ignoring countless similar expressions, the government sends a clear message that certain types of political speech will be met with criminal sanction—a result fundamentally at odds with the First Amendment, which forbids the government from restricting speech based on its content. *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002) (First Amendment "means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.").

The discriminatory effect in this case is clear: Mr. Butler has been prosecuted for conduct that routinely goes unpunished. The timing of the prosecution—coinciding with Speaker Johnson's reelection campaign and unfavorable media surrounding the Speaker and President—provides compelling evidence of discriminatory intent. The government's decision to prosecute Mr. Butler represents an unprecedented departure from established enforcement patterns, targeting him not because his conduct was uniquely egregious, but because his exercise of constitutional rights drew scrutiny from law enforcement.

### 3. AT A MINIMUM, DISCOVERY IS REQUIRED

Even if the Court concludes that dismissal is not warranted on the current record, Mr. Butler is entitled to discovery to develop his selective prosecution claim. Under *Armstrong*, a defendant need only present "some evidence tending to show the existence of the essential elements" of selective prosecution to warrant discovery. *See* 517 U.S. at 468.

The evidence outlined above readily satisfies this standard and warrants discovery into the government's charging decisions and enforcement practices. Specifically, the Court should order the government to turn over all internal communications potentially relevant to Mr. Butler's equal protection claim, including communications by senior officials in the Department of Justice regarding the exercise of its authority to prosecute individuals for making statements critical of

President Trump or the activities of his administration.

## IV.   CONCLUSION

The prosecution of Mr. Butler represents precisely the type of selective enforcement that the Equal Protection Clause prohibits. By singling him out for prosecution while ignoring countless others who have engaged in similar conduct, the government has violated fundamental constitutional principles designed to ensure equal treatment under law. Such selective enforcement cannot stand in a system committed to equal justice under law.

**WHEREFORE**, JUSTIN CHADWICK BUTLER, prays this Court grant this motion and dismiss the indictment in this case.

RESPECTFULLY SUBMITTED,
CRISTIE GAUTREAUX GIBBENS
FEDERAL PUBLIC DEFENDER FOR THE
MIDDLE & WESTERN DISTRICTS OF LOUISIANA

*/s/ Charles H. Kammer, III*                         s/ *Holly C. Merriam*

| | |
|---|---|
| **Charles H. Kammer, III** | **Holly C. Merriam** |
| LSBA NO. 21658 | LSBA NO. 41581 |
| 300 Fannin Street, Ste. 2199 | 300 Fannin Street, Suite 2199 |
| Shreveport, Louisiana 71101 | Shreveport, Louisiana 71101 |
| Tel: (318) 676-3310 | Tel: (318) 676-3310 |
| Pete_Kammer@fd.org | Holly_Merriam@fd.org |
| Assistant Federal Public Defender | Assistant Federal Public Defender |
| *Attorney for Defendant* | *Attorney for Defendant* |

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 29, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

**_s/ Chales H. Kammer, III_**