**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 5:26-CR-00088** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **JUSTIN CHADWICK BUTLER** | **MAGISTRATE JUDGE HORNSBY** |

# MEMORANDUM ORDER

Before the Court is a Motion to Change Venue [Doc. No. 34] filed by Defendant Justin Chadwick Butler ("Defendant") pursuant to Rule 21(a) of the Federal Rules of Criminal Procedure. The United States of America ("the Government") opposed the Motion [Doc. No. 41]. Defendant filed a reply [Doc. No. 44].

After carefully considering the parties' filings and applicable law, the Motion is **DENIED**.

## I. BACKGROUND

The alleged conduct began in September 2025, when the United States Capitol Police began investigating Defendant for posts he made on social media.[1] The alleged posts concerned both President Donald Trump and Speaker of the House Mike Johnson ("Johnson").[2] After a visit from Capitol Police, Defendant allegedly continued posting online.[3]

[1] [Doc. No. 42].
[2] [Id. at p. 2].
[3] [Id.].

The concerning online activity included posts such as "I really hope I see lots of dead ICE agents and Traitor Mike with a patriotic bullet through his lying face soon . . I think holes in traitors [sic] faces is the next step;" "Sure hope someone kills Trump and Mike Johnson this Christmas;" "My new years [sic] resolution is to be meaner, and maybe get arrested by the feds for calling Mike Johnson a traitor that should be burned alive . . . So yeah, he should be tried and executed;" "Are the traitors shot in the face yet?"; "Mike Johnson couldn't lie so smoothly with bullet holes in his face;" "Speaker Mike Johnson is a traitor. Death to traitors;" and "A real patriot would kill some of these traitors that have made this possible. President Donald J. Trump and Speaker Mike Johnson top of the list of who i [sic] want to see tried and hanged for treason."[4]

On February 12, 2026, a criminal complaint was filed in this District alleging that Defendant violated both 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. §875.[5] The alleged offenses entail "Influencing, Impeding, or Retaliating against a Federal official," and to "Transmit in Interstate or Foreign Commerce any Communication Containing any Threat."[6] In February 2026, Magistrate Judge Hornsby issued an arrest warrant for Defendant.[7] In March 2026, a federal grand jury indicted Defendant in the Shreveport Division for the Western District of Louisiana for Cyberstalking under 18 U.S.C. §§ 2261A(2)(B) and 2261(b)(5), Threats Against a

[4] [Doc. No. 12-1, pp. 3-5].
[5] [Doc. No. 1].
[6] [Id.].
[7] [Doc. No. 2].

Successor to the Presidency under 18 U.S.C. § 871(a), and Threats Against the President and a Successor to the Presidency under 18 U.S.C. § 871(a).[8]

Johnson is a congressman in the Fourth Congressional District of Louisiana and the Speaker of the House of Representatives.[9] His district includes the parishes of Bossier, Bienville, Claiborne, Caddo, DeSoto, Red River, Sabine, and Webster.[10] Defendant's trial is scheduled to take place in the Western District of Louisiana, Shreveport Division, which encompasses Bienville, Bossier, Caddo, Claiborne, DeSoto, Red River, Sabine, and Webster Parishes; this is virtually the same geographic area as Johnson's district.[11]

Defendant filed this Motion to Change Venue to a district other than the Western District of Louisiana alleging that actual and presumptive prejudice exist.[12] Alternatively, Defendant asks to transfer to another division of this District that does not encompass Johnson's constituents.[13] The Government opposed the Motion.[14]

The issues have been briefed, and the Court is prepared to rule.

## II. LAW AND ANALYSIS

The Constitution provides that crimes shall be tried "in the State where the said Crimes shall have been committed," by an impartial jury "of the State and *district* wherein the crime shall have been committed." U.S. CONST. art. III, § 2, cl. 3; amend. VI (emphasis added). The Federal Rules of Criminal Procedure dictate that

[8] [Doc. No. 16].
[9] [Doc. No. 34-1, p. 2].
[10] [Id.].
[11] [Id. at p. 3].
[12] [Doc. No. 34].
[13] [Id.].
[14] [Doc. No. 42].

the "government must prosecute an offense in a district where the offense was committed." FED. R. CRIM. P. 18.

In addition, the United States Attorneys have broad authority to enforce criminal laws. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). This broad authority means that "'the presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Id.* (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926)). Subject matter jurisdiction and venue are simple in the criminal context: the district court has jurisdiction simply because an indictment charges the defendant with a federal crime. *United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013). In the absence of clear evidence to the contrary, it can be presumed that the United States Attorneys have filed cases in correct venues, properly discharging their duties.

These prescriptions, though, "do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial." *Skilling v. United States*, 561 U.S. 358, 378 (2010). But a district court is "not required to grant a motion to transfer venue. . . absent a strong showing of prejudice." *United States v. Wilcox*, 631 F.3d 740, 747 (5th Cir. 2011). The Federal Rules of Criminal Procedure require that the court transfer criminal proceedings to another district if "the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." FED. R. CRIM. P. 21(a); *see Skilling*, 561 U.S. at 378, n. 11.

A presumption of prejudice only arises in "extreme cases," though. *Id.* at 381; *Wilcox*, 631 F.3d at 749. And even when there appears to be a display of prejudice, the judge may quash such concerns through prophylactic *voir dire*. *Wilcox,* 631 F.3d at 748.

Courts have been hesitant and unlikely to find such great prejudice that a case must be transferred. For example, in *Skilling*, a former CEO of Enron was charged with conspiracy to commit securities and wire fraud, securities fraud, wire fraud, and insider trading based on his activities while leader of Enron. *Skilling*, 561 U.S. at 369. Skilling sought to transfer his trial outside of Houston, Texas, where Enron was based. *Id.* He presented evidence of extensive pretrial publicity and direct community hostility towards him. *Id.* at 369–70. But the Supreme Court upheld the district court's decision not to transfer the case because "[p]rominence does not necessarily produce prejudice, and juror *impartiality*…does not require *ignorance*." *Id.* at 381.

In the treason trial of Aaron Burr, Chief Justice Marshall provided guidance for testing a juror for impartiality:

> [L]ight impressions which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony, and resist its force, do constitute a sufficient objection to him.

*United States v. Burr*, 25 F. Cas. 49, 51 (1807). Only those deep impressions which close a juror's mind to the case before them constitute improper partiality.

Ultimately, "the trial judge has broad discretion in determining whether transfer is warranted." *United States v. Alvarado*, 647 F.2d 537, 539 (5th Cir. 1981).

In the instant case, Defendant's argument of prejudice is based exclusively on Johnson's popularity. Defendant argues that "Speaker Johnson's voting base represents the potential jury pool,"[15] and that "the data demonstrates 86% of the population already made up their mind in [Johnson's] favor."[16] This overestimates Johnson's role as a legislator and his influence on this case. Johnson's voting base is *within* the potential jury pool, to be sure, but by Defendant's own numbers, Johnson won reelection by 86%, meaning 14% of voters did not vote for him.[17] Additionally, Defendant does not consider individuals who did not vote at all. Even taking Defendant's assertion that every person who previously voted for Johnson has already determined Defendant's criminal culpability, there are still many eligible jurors available.

Defendant has not sufficiently proven that Johnson's popularity poisons the jury pool with prejudice. Broad use of voting numbers, campaign dollars, road signs, and magazine articles could be indicators of prejudice, but Defendant has failed to show sufficient prejudice that directly impacts the instant case. There are no instances in the record of pervasive and inflammatory pretrial publicity or other factors that demonstrate it is impossible for Defendant to receive a fair trial.

---

[15] [Doc. No. 34-1, p. 4].
[16] [Doc. No. 44, p. 2].
[17] *See* [Doc. No. 34-1, pp. 2, 5].

Defendant makes a showing of *potential* prejudice, but the law requires much more than that. Even if Defendant is correct to the extent that Johnson's influence as an elected official has prejudiced some potential veniremen, the Fifth Circuit caselaw is clear that the presumption of prejudice may, in some cases, be rebutted through *voir dire*. *Wilcox*, 631 F.3d at 748. *Voir dire* will be conducted here, and instances of prejudice can be culled through that process. Defendant has not made a sufficient showing that he cannot obtain a fair and impartial trial in the Shreveport, Louisiana Division. Therefore, transferring to a different district, or even division, is unnecessary, and Defendant's Motion is denied.

## III. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that Defendant Justin Chadwick Butler's Motion to Change Venue [Doc. No. 34] is **DENIED**.

MONROE, LOUISIANA, this 14th day of September, 2026

Terry A. Doughty
United States District Judge